IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

                Plaintiff,

v.                                     Case No. 24-CR-132-JFH

SALASHA FAY BOSLEY AND
RONDA KAY BELCHER,

                Defendants.

## OPINION AND ORDER

Before the Court is a Motion to Dismiss Indictment Due to Unconstitutionally Vague Statement or Offense ("Motion") filed by Defendant Ronda Kay Belcher ("Defendant Belcher"). Dkt. No. 53. The Motion argues that 21 OKLA. STAT. §§ 843.5(C) and 843.5(O) (the "Child Neglect Statute") is unconstitutionally vague on its face. Alternatively, the Motion argues that the Child Neglect Statute is unconstitutionally vague as applied to Defendant Belcher. The United States of America (the "Government") opposes the Motion ("Response"). Dkt. No. 54.

The Court held a Pretrial Conference ("PTC") on December 12, 2024, and heard argument on the Motion and Response. At the PTC, both parties were provided the opportunity answer questions posed by the Court and to present arguments regarding the relief requested in the Motion.

Following the PTC, the Government filed an Opposed Motion to Supplement its Response to the Motion. Dkt. No. 67. Because the Court has already heard argument on the Motion, the Government's Opposed Motion to Supplement its Response to the Motion is DENIED.

For the reasons set forth below, the Motion to Dismiss Indictment Due to Unconstitutionally Vague Statement or Offense [Dkt. No. 53] is DENIED in part and GRANTED in part.

I. **BACKGROUND**

    A. **Procedural Background**

On August 14, 2024, Defendant Belcher and her granddaughter Salasha Fae Bosley ("Ms. Bosley") were each charged with two counts of Child Neglect in Indian Country. Dkt. No. 2. On December 12, 2024, Ms. Bosley entered a guilty plea to Counts One and Two of the indictment. Dkt. No. 64. The case against Defendant Belcher as to Counts Three and Four of the indictment is currently set for trial on the Court's January 6, 2025 docket. Dkt. No. 46.

    B. **Charged Conduct**[1]

Ms. Bosley is the biological mother of a son ("Victim 2") and a daughter ("Victim 1"), ages three and one years old respectively. Dkt. No. 54 at 1-2. Defendant Belcher is the grandmother of Ms. Bosley and the great-grandmother of Victim 1 and Victim 2 (collectively, the "Children").

According to the Indictment, between September 2023 and June 16, 2024, Defendant Belcher engaged in child neglect as to Victim 1 and Victim 2. Dkt. No. 2. Specifically, Defendant

---

[1] Count Three of the Indictment states that between September 2023 and June 16, 2024, Ms. Belcher "did willfully and maliciously fail and omit to provide Victim 1, a child under the age of eighteen, adequate nurturance and affection, food, shelter, sanitation, hygiene, medical care and supervision, by failing to obtain medical care, failing to provide food, failing to provide adequate nurturance and affection, and failing to provide sanitary living conditions to Victim 1, all while [Defendant Belcher] was responsible for the health, safety and welfare of Victim 1…" Dkt. No. 2 at 2. Count Four of the Indictment mirrors Court Three with respect to Victim 2. Essentially, these Counts of the indictment charge Ms. Belcher with every component of the Child Neglect Statute. However, in its Response, the Government focuses its allegations on its assertion that Ms. Bosley willfully failed to supervise the Children when she left them with their mother for two nights. According to the Government: "Despite ample knowledge of what would happen to the children if they were left alone with Defendant Bosley and despite claiming to be the children's parental figure, Defendant Belcher chose to leave the children unsupervised with Defendant Bosley, which led to their injuries. A reasonable person would have understood that Defendant Belcher's conduct was prohibited under the Oklahoma Child Neglect statute." Dkt. No. 54 at p. 4.

Belcher is charged with willfully or maliciously engaging in child neglect in violation of 21 OKLA. STAT. ANN. § 843.5(C).

### C. Factual Background

In September 2023, Ms. Bosley, Victim 1, and Victim 2 moved into Defendant Belcher's residence which is located in Indian Country in the Eastern District of Oklahoma. On June 16, 2024, Ms. Bosley found Victim 1 nonresponsive. Dkt. No. 54 at 1. Victim 1 was life flighted to Saint Francis Hospital. Dkt. No. 54 at 2.

At the time Victim 1 was found nonresponsive, Defendant Belcher was driving back to her residence after spending two nights away at nearby Fort Gibson Lake. Dkt. No. 54 at 2. While Defendant Belcher was out of town for the weekend, the Children were left solely in Ms. Bosley's care. Defendant Belcher was not at the home at the time Victim 1 was found nonresponsive.

After Victim 1 received medical care, both of the Children were evaluated by a Board-Certified child abuse and child neglect pediatrician who medically diagnosed them with child environmental and physical neglect.

During an interview conducted by a Special Agent of the Federal Bureau of Investigation ("FBI"), Defendant Belcher stated that she frequently had to remind Ms. Bosley to feed, bathe, and change the Children's diapers. Defendant Belcher said that Ms. Bosley was lazy and often fed the Children cold hot dogs. On one prior occasion, Defendant Belcher stated that she left the Children with Ms. Bosley for the day and when she returned, the baby girl had a bad diaper rash that required special care for a couple of days until the blisters healed.

Following the interview, the Government sought an indictment from the Grand Jury as to the Children's mother and great-grandmother. This federal case began by sealed indictment against both Ms. Bosley and Defendant Belcher on August 14, 2024. Dkt. No. 2. Ms. Bosely has

entered a plea of guilty to the charges against her. A jury trial as to Defendant Belcher is set for January 6, 2024. Dkt. No. 46.

II.   **ARGUMENT AND AUTHORITIES**

Defendant Belcher moves to dismiss Counts Three and Four of the indictment based on her assertion that the Child Neglect Statute is unconstitutionally vague. Defendant Belcher argues that the statute is unconstitutionally vague on its face or, alternatively, the statute is unconstitutionally vague as applied to the facts and circumstances of this case. "A statute can be unconstitutionally vague on its face or as applied to the facts of a particular case, but a court will consider a law's facial vagueness only if it threatens First Amendment interests or if the challenge is made before enforcement. Where a statute does not implicate defendant's First Amendment freedoms, vagueness challenges … must be examined in light of the facts of the case at hand." *United States v. Martin-Escobar*, 622 F. Supp. 3d 1057, 1060 (N.D. Okla. Aug. 22, 2022) (internal quotations and citations omitted).

**A. Statutory Basis for Child Neglect According to Oklahoma Law.**

According to 21 OKLA. STAT. ANN. § 1-1-105(49)(a), "child neglect" means:

(1) the failure or omission to provide any of the following:

(a) adequate nurturance and affection, food, clothing, shelter, sanitation, hygiene, or appropriate education,

(b) medical, dental, or behavioral health care,

(c) supervision or appropriate caretakers to protect the child from harm or threatened harm of which any reasonable and prudent person responsible for the child's health, safety or welfare would be aware, or

(d) special care made necessary for the child's health and safety by the physical or mental condition of the child.

Section 843.5(O)(12) defines "Person responsible for a child's health, safety or welfare" as, among other things, a person who "has voluntarily accepted responsibility for the care or supervision of a

child." 21 OKLA. STAT. § 843.5(O)(12)(j). The Government alleges that Defendant Belcher is a person responsible for the Children's health, safety, or welfare and that Defendant Belcher engaged in conduct constituting child neglect.

### B. The Child Neglect Statute is Not Unconstitutionally Vague on its Face.

A statute can be unconstitutionally vague on its face or as applied to the facts of the case at issue. To be facially unconstitutionally vague, the statute must (1) threaten First Amendment interests; or (2) be challenged by the defendant before the statute is enforced against the defendant. *Martin-Escobar*, 622 F. Supp. 3d at 1060.

In the Motion, Defendant Belcher asserts that the Child Neglect Statute is unconstitutionally vague on its face. "A basic principle of due process is that a law is void for vagueness 'if it does not clearly define its prohibitions.'" *Id.* (citing *Doctor John's, Inc. v. City of Roy*, 465 F.3d 1150, 1157 (10th Cir. 2006). Specifically, Defendant Belcher argues that the Child Neglect Statute is facially vague because it fails to provide adequate notice of what constitutes "neglect" of a child. Dkt. No. 53 at 3. Defendant Belcher asserts that, because the Child Neglect Statute does not define "neglect" and "adequate" with a meaningful degree of precision, the statute can be arbitrarily enforced by police and prosecutors. *Id.* at 11. She also alleges that the Child Neglect Statute's nearly limitless sentencing range is unconstitutional because the statute "establishes a sentencing range of a $500 fine up to life imprisonment, but it provides no standards for who should be fined and who should be imprisoned." *Id.* at 16.

The Tenth Circuit Court of Appeals set forth a two-prong test to determine whether a statute is unconstitutionally vague on its face. *United States v. Rodebaugh*, 798 F.3d 1281, 1294 (10th Cir. 2015) (holding that "a court will consider a law's facial vagueness only if it threatens First Amendment interests or if the challenge is made before enforcement."). The two-prong test

requires the Court to find that the statute implicates the defendant's First Amendment right. "In other words, if the right of familial association is a First Amendment right, and the child [neglect] statute threatens First Amendment interests by burdening the right of familial association, then the statute may be subject to a facial vagueness attack. *Martin-Escobar*, 622 F. Supp. 3d at 1062. "[T]he Tenth Circuit held that 'the familial right of association is properly based on the concept of liberty in the Fourteenth Amendment.'" *Id.* (quoting *Griffin v. Strong*, 983 F.2d 1186, 1547 (10th Cir. 1993). As a result, the Child Neglect Statute does not implicate a First Amendment right. *Id.* at 1063.

Alternatively, a statute may be challenged as facially vague if the defendant challenged the constitutionality of the statute before it was enforced against her.

The Court finds that the Child Neglect Statute is not unconstitutionally vague on its face because it fails to satisfy either prong of the *Rodebaugh* test established by the Tenth Circuit to attack a statute as unconstitutionally facially vague.[2] First, the Child Neglect Statute does not implicate Defendant Belcher's First Amendment freedoms.[3] Second, Defendant Belcher did not challenge the statute as unconstitutional prior to her indictment. Therefore, Defendant Belcher's Motion is denied in part.

Next, the Court considers Defendant Belcher's alternative argument that the Child Neglect Statute is unconstitutionally vague as applied to the facts of her case.

---

[2] Defendant Belcher argues that the *Rodebaugh* test is no longer the standard for considering a law's facial vagueness as a result of Supreme Court precedent issued after the *Rodebaugh* decision. Defendant Belcher's argument fails because the Tenth Circuit reaffirmed the *Rodebaugh* test when it issued its opinion in *United States v. Wells*, 38 F.4th 1246, 1258 (10th Cir. July 6, 2022). *See also Martin-Escobar*, 622 F. Supp. 3d at 1061.

[3] *United States v. Rose*, Case No. 21-CR-294-RAW, 2022 WL 1087584, *1 (E.D. Okla. Apr. 11, 2022) (holding that Oklahoma's child abuse and neglect statutes do not implicate First Amendment rights).

### C. The Child Neglect Statute is Unconstitutionally Vague as Applied to Defendant Belcher's Alleged Conduct.

Whether a statute is unconstitutionally vague in its application is an issue of law. *United States v. Rodebaugh*, 798 P.3d 1281 1295 (10th Cir. Aug. 25, 2015). There are two independent bases in which a statute may be deemed unconstitutionally vague in application:

1. If the statute fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct the statute prohibits; or

2. The statute authorizes or encourages arbitrary or discriminatory enforcement.

*Hill v. Colorado*, 530 U.S. 703, 732, 120 S. Ct. 2480 (2000).

Based on this standard and the circumstances applicable to this specific case, the Court first considers whether a person of ordinary intelligence exercising ordinary common sense would have sufficiently understood that her conduct was prohibited.[4]

### 1. The Alleged Conduct at Issue.

At the PTC, the Government argued that Defendant Belcher's conduct in leaving the Children in the care and custody of their mother constituted child neglect. The Government claims that Defendant Belcher should have called the Department of Human Services ("DHS") or law enforcement before leaving for the weekend. In making this assertion, the Government acknowledged to this Court that when Defendant Belcher left on Friday the Children were in acceptable condition and without injury.

During the PTC, this Court questioned the Government about the basis on which it is prosecuting Defendant Belcher for child neglect. In response, the Government explained that the crux of its argument that Defendant Belcher violated the Child Neglect Statute stems from the fact that Defendant Belcher left the children alone with their mother on the weekend of June 16, 2024.

---

[4] *Thomas v. City of Baxter Springs, Kansas*, 369 F. Supp. 2d 1291, 1296 (D. Kan. May 10, 2005).

Essentially, the Government takes the position that Defendant Belcher willfully neglected the children by leaving the children in their own mother's care. This is a novel position.

### 2. Would a Person of Ordinary Intelligence have Understood that Ms. Belcher's Alleged Conduct was Prohibited.

A statute is unconstitutionally vague in its application to the accused conduct if a person of ordinary intelligence would not have understood that her conduct was prohibited. No one should have to guess whether her conduct meets the expectations of the law.

The Court now evaluates whether Defendant Belcher, a person of ordinary intelligence, would have known that leaving the Children with their own custodial mother for two nights was conduct prohibited by the Child Neglect Statute, placing Defendant Belcher at risk of a criminal indictment if the Children's mother neglected them.[5]

### a. The Elements of Child Neglect Under Oklahoma Law.

To find a defendant guilty of child neglect, the Government must prove the following elements beyond a reasonable doubt:

> <u>First</u>, Defendant Belcher was a person responsible for the Children's health, safety, or welfare;
>
> <u>Second</u>, Defendant Belcher willfully or maliciously;
>
> <u>Third</u>, failed or omitted to provide;
>
> <u>Fourth</u>, Adequate:
> a. nurturance and affection
> b. food
> c. clothing
> d. shelter

---

[5] "It is fundamental that statutes creating criminal offenses must be drawn in language sufficient to apprise the public of exactly what conduct is forbidden. A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Weeks v. State,* 362 P.3d 650, 655 (Okla. Ct. Crim. App. Nov. 23, 2015 (quoting *State v. Saunders*, 886 P.2d 496, 497 (Okla. Ct. Crim. App. Nov. 29, 1994)).

     e. sanitation
     f. hygiene
    Appropriate:
     a. education
     b. medical/dental/behavioral health care
     c. care/supervision (appropriate caretakers);

  <u>Fifth</u>, for a child under the age of eighteen.

OUJI-CR 4-37.

### i. The First Element for Child Neglect Requires Proof that Defendant Belcher Voluntarily Assumed the Care and Supervision of the Children.

  As an initial matter, the Court evaluates the first element to determine whether the Child Neglect Statute applies to Defendant Belcher. According to § 843.5(O)(12)(j) of the Child Neglect Statute, a person responsible for a child's health, safety or welfare includes "a person who has voluntarily accepted responsibility for the care or supervision of a child." 21 OKLA. STAT. ANN. § 843.5(O)(12)(j).

  The Government argues that Defendant Belcher was more of a parental figure to the Children than their mother and, therefore, Defendant Belcher voluntarily accepted responsibility for the care or supervision of the Children. Dkt. No. 54 at 4. In September 2023, Defendant Belcher permitted her granddaughter and great-grandchildren to stay at her home temporarily while her granddaughter got on her feet. While Ms. Bosley and the Children were staying with Defendant Belcher, Ms. Bosley maintained her parental rights.

  At the PTC, Defendant Belcher contended that the Children's mother is not incapacitated due to low intellectual functioning or mental defect; she is not an alcoholic or drug addict; and she has no history of violence. The Government did not dispute this. Rather, the Government argued that Ms. Bosley needed a lot of reminders to feed, bathe, or change the children's diapers. By

providing these reminders, the Government contends that Defendant Belcher voluntarily accepted responsibility for the care or supervision of the Children.

Published cases addressing persons who voluntarily accepted responsibility for the care or supervision of children focus on the roles of babysitters and day care workers. In such cases, the neglectful conduct at issue took place while the child was in the temporary custody of the babysitter or day care worker. *See e.g., Townsend v. Oklahoma*, 144 P.3d 170, 172 (Okla. Ct. Crim. App. September 21, 2006) (finding defendant, who was babysitting a child, to be a person responsible for child's health or safety within the meaning of the Child Neglect Statute because defendant actively sought to care for the child and explicitly accepted responsibility for the child).

In analyzing application of the Government's theory that Defendant Belcher is a person responsible for the Children, the Court considers two hypothetical scenarios:

> Hypothetical #1: A grandmother hosts her three-year old grandson for a sleep over. The boy is in good health and free of injury when he arrives for the sleep over. Although the grandmother does not believe her grandson's mother consistently provides quality care to the boy, she nevertheless, permits the custodial mother to retrieve her son after the sleep over. A week later, the boy injures himself climbing on the kitchen countertop when his mother had fallen asleep and was not supervising him.

> Hypothetical #2: A grandmother hosts her three-year old grandson for a sleep over. During the sleep over, the grandmother leaves her grandson home alone while she goes to the pharmacy. While the grandmother is gone, the boy injures himself climbing on the kitchen countertop.

In Hypothetical #2, it is clear to the Court that the grandmother was a person responsible for supervising her grandson while he was in her care because she voluntarily accepted responsibility for the care or supervision of him during that time period. Further, a person of ordinary intelligence would have understood that she could be held responsible for neglecting her young grandson when she left him home alone.[6]

---

[6] In *United States v. Dennis*, Case No. 20-CR-141-CVE, 2020 WL 7348008 (N.D. Okla. Dec. 14, 2020), the court evaluated whether the father of two children violated the Child Neglect Statute. There, the defendant was indicted on two charges of child neglect. The charges were applicable to a single day in which the defendant was alleged to have maliciously and willfully failed to provide adequate supervision for two children who were in his care. As a result of the defendant's neglect, the children died after locking themselves in his truck while the defendant was napping. The defendant challenged the child neglect charges as unconstitutionally vague in application to his conduct.

The Honorable Claire Eagan evaluated the defendant's vagueness argument in light of the charged conduct and found as follows:

> Under this standard, the Court has no difficulty finding that a person of ordinary intelligence would have understood that his conduct was prohibited. Oklahoma law defines "neglect" as the failure or omission to provide "supervision or appropriate caretakers" for the protection of minor children. OKLA. STAT. tit. 10A, § 1-1-105(49). The affidavit attached to the complaint states that defendant admitted that he left two minor children alone while he went to a convenience store, and he fell asleep for several hours after he returned home. Dkt. # 1, at 2-3. The minor children were allegedly in defendant's care at the time, and he fell asleep for approximately four hours without providing other supervision for the children. *Id.* at 2. Surveillance footage shows that the children set off the alarm on defendant's truck when they initially attempted to enter it at 1:22 p.m., and they successfully entered the truck about seven minutes later. *Id.* Defendant did not check his truck until approximately 5:30 p.m., and he discovered that R.D. and T.D. were deceased in the backseat of the truck. *Id.* This conduct clearly falls within the definition of neglect under § 1-1-105, and a reasonable person would have understood that the charged conduct was prohibited by the statute.

*Dennis,* 2020 WL 7348008 at *4.

When considering Hypothetical #1, the Court notes that it is not aware of any instances where a grandparent has been prosecuted for neglect or injuries that occurred to a child during a time period when the grandparent voluntary returned responsibility for the care or supervision of a child back to the child's parent.  Applying the Child Neglect Statute to nonparents during time frames when the nonparent is not voluntarily assuming responsibility for the care of a child weighs in favor of a finding that the Child Neglect Statute is unconstitutionally vague as applied to the facts of this case.  The Court is not convinced that an ordinary person would believe he or she is a person "voluntarily assuming responsibility for the care and supervision of a child" during periods of time when such person has not agreed to take responsibility.

The Court has conducted an expansive search for legal decisions wherein a nonparent *who was not physically present* when alleged neglect occurred was charged with child neglect by virtue of not remaining with the children at all times.  The Court has found no such cases.  Instead, in each of the reported child neglect cases, the accused defendant was responsible for the children's care and physically present when the alleged neglect occurred.

Although not argued by Defendant Belcher in her Motion, the Court could determine that the presumption set forth in *Troxel v. Granville*, 530 U.S. 57, 66, 120 S. Ct. 2054, 2060 (2000) is relevant to its analysis.  The *Troxel* Court held that the due process clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions as to care, custody, and control of their children.  Citing a long history of precedence, the Supreme Court referenced one of its prior opinions, *Prince v. Massachusetts*.[7]  "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include

---

[7] 321 U.S. 158, 166, 64 S. Ct. 438 (1944).

preparation for obligations the state can neither supply nor hinder." *Troxel*, 120 S. Ct. at 2060. There is a presumption that fit parents act in the best interest of their children. *Id.* at 2061.

The Court is unaware of any evidence that, prior to June 2024, Ms. Bosley, the Children's biological mother, was deemed to be fit. Although Ms. Bosley's fitness to parent was reviewed in state investigations,[8] she was never determined to be unfit. Without such a finding, the Court finds it likely that a person such as Defendant Belcher would not have believed that leaving her great-grandchildren with their mother could be considered criminal conduct.

The relationship of a biological parent to her children is a "fundamental constitutionally protected right." *Murrell v. Cox*, 226 P.3d 692, 698 (Okla. Dec. 15, 2009). "To deprive a parent of legal custody of a child in favor of third parties, the parent's unfitness must be demonstrated by clear and compelling evidence." *Id.* Third parties include grandparents and great-grandparents. As a result, grandparents do not have a constitutional right to custody or visitation with their grandchildren. *Id.* In Oklahoma, a grandparent's statutory right to "reasonable visitation" requires "a demonstration that: (1) it is "in the best interest of the child," (2) "parental unfitness" has been demonstrated or the "grandparent has rebutted, by clear and convincing evidence, the presumption that the fit parent is acting in the best interests of the child by showing that the child would suffer harm or potential harm without the granting of visitation rights to the grandparent of the child," and (3) the intact nuclear family has been disrupted by one of the events enumerated in the statute. . . . These are the only circumstances in which "the [grandparent visitation] statute clearly divests parents of the right to decide what is in their child's best interest and gives that determination to

---

[8] Kansas Department for Children and Families investigated Ms. Bosley on or about October 24, 2022 and May 22, 2023. Dkt. No. 55 at 3.

the district court" vesting grandparents "with the standing to pursue visitation rights over the objections of the parents." *Id.* (quoting *In re Herbst*, 971 P.2d 395, 397 (Okla. Oct. 13, 1998)).

When grandparents, including those who have been the primary caregivers for a grandchild for a lengthy period of time, may lose their legal right to spend time with their grandchild, it strikes this Court as unreasonable to assume that such grandparent would simultaneously believe that leaving their grandchild in his or her parent's care could result in illegal conduct. This weighs in favor of finding the Child Neglect Statute unconstitutionally vague as applied to Defendant Belcher.

### ii. The Second Element of Child Neglect Requires Proof of Willful Neglect.

Two prove the second element of child neglect, the Government must prove that Defendant Belcher acted willfully or maliciously when she left the Children in the care of their mother while she spent a weekend away from home. During the PTC, the Government stated that it does not contend that Defendant Belcher acted maliciously. Rather, the Government contends that Defendant Belcher acted willfully by failing to provide (a) adequate nurturance and affection, food, clothing, shelter, sanitation, hygiene, or appropriate education, (b) medical, dental, or behavioral health care, and (c) supervision or appropriate caretakers to protect the child from harm or threatened harm of which any reasonable and prudent person responsible for the child's health, safety or welfare would be aware, *when she left the Children alone with their mother*.

The failure or omission to provide supervision to protect the child from harm or threatened harm must be of a nature that a reasonable and prudent person responsible for the child's health, safety, or welfare would be aware. *United States v. Pride*, Case No. 23-CR-124-RAW, 2023 WL 8004812, *9 (E.D. Okla. Nov. 17, 2023). The defendant in *Pride* was charged with child neglect after he sped down a highway without possessing a valid driver's license and without restraining

his 9-month-old and three-year-old children in car seats. When the defendant lost control of the vehicle, the children were ejected, resulting in their untimely deaths. *Id.* at *5. Arguing that traffic violations should not result in charges of child neglect, the defendant filed a motion to dismiss. The court in *Pride* found that a reasonable and prudent person would know that driving in excess of the speed limit with children unrestrained could cause the children harm. *Id.* at *9-10. *See also State v. Green*, 474 P.3d 886, 892 (Okla. Ct. Crim. App. Sept. 10, 2020) (finding defendant had fair warning that she could be criminally liable for child neglect for taking methamphetamine during her third trimester, resulting in stillbirth); *United States v. Walker*, 74 F.4th 1163, 1191 (10th Cir. July 24, 2023) (mother had fair notice that leaving her child alone with her boyfriend who she had previously witnessed choking and physically restraining the boy posed the risk of further abuse which could subject mother to charges of child neglect).

Turning to the case at bar, the Court considers whether a reasonable and prudent person would be put on notice that leaving children in the sole care of their custodial parent (who has never been found unfit) may subject such person to criminal liability if the children were harmed by their parent while such person was not present. Under these circumstances, the Court does not believe that a reasonable and prudent person would have fair notice of the potential for criminal liability for child neglect. Further, the Court does not believe that a person of ordinary intelligence would, under these circumstances, understand that her conduct in leaving the Children with their own mother for the weekend could subject her to charges for child neglect. For this reason and the reasons identified above, the Court finds the Child Neglect Statute to be unconstitutionally vague as applied to Defendant Belcher's conduct.

Although the Court could stop its analysis now, it opts to also consider whether the Child Neglect Statute, as applied to Defendant Belcher, authorizes or encourages arbitrary or discriminatory enforcement.

### D. As Applied to Ms. Belcher, the Child Neglect Statute Authorizes or Encourages Arbitrary or Discriminatory Enforcement.

With respect to the Child Neglect Statute authorizing or encouraging arbitrary and discriminatory enforcement, the Court notes that virtually every published child neglect case involved a child who died as a result of abuse or neglect. Even with such horrendous outcomes, none of the case law this Court reviewed included charges against another person, who lived in the home, but was not directly involved in the neglect.

One example involves a sentencing by Judge White on remanded. *United States v. Clark*, 981 F.3d 1154 (10th Cir. Dec. 9, 2020). Defendant Clark lived in a house near Stilwell, Oklahoma with her two children, her sister, her sister's two children, and two other people. One of Clark's children fell when playing with her cousins. Her injuries resulted in her developing an infection that was not timely treated and tragically resulted in her death. Although Clark had previously been investigated for neglect, was known to use marijuana and methamphetamine regularly, and other adults living in the home were aware of the child's infection, none were charged.

At the PTC, the Court advised the Government of its concern that the Child Neglect Statute, as applied to Defendant Belcher, appears to be arbitrarily applied. Specifically, the Court reminded the Government that with the position of the United States Attorney's Office comes great authority and with that authority comes great responsibility. This means that the Government is justified in prosecuting people to the fullest extent of the law. However, the Government must also take a step back and look at things objectively and with experience. At all times, the Government must serve the interests of justice. When the Government does not do so, then the Court must. The

16

ultimate responsibility of the Court is to ensure that justice is being served; justice is not served when an unconstitutionally vague charged is levied by the Government.

The Court finds the Child Neglect Statute to be unconstitutionally vague as applied to the facts of this case because it is arbitrarily (and potentially discriminatorily) being enforced.

## CONCLUSION

The Government's position could potentially implicate any relative who periodically aids in caring for a child with the belief that the custodial parent may be inadequate at times. This expansive approach to enforcing the Child Neglect Statute is of a nature that a person of ordinary intelligence would not believe that his or her conduct was legally prohibited. Further, enforcing the Child Neglect Statute against a nonparent who was not directly involved in neglecting children authorizes or encourages arbitrary or discriminatory enforcement.

IT IS THEREFORE ORDERED that:

The Government's Opposed Motion to Supplement its Response to the Motion [Dkt. No. 67] is DENIED;

Defendant's Motion to Dismiss Indictment Due to Unconstitutionally Vague Statement or Offense [Dkt. No. 53] is DENIED IN PART and GRANTED IN PART as set forth in this Order; and

Count Three and Count Four of the Indictment [Dkt. No. 2] against Defendant Ronda Kay Belcher are DISMISSED WITHOUT PREJUDICE.

DATED this 20th day of December 2024.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE